**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

IMOGENE J. ANCELL, et al.,          )
                                    )
          Plaintiffs,               )
                                    )
v.                                  )          Case No. 2:13-cv-04251-NKL
                                    )
U.S. BANK TRUST, N.A., et al.,      )
                                    )
          Defendants.               )

**ORDER**

Plaintiffs Imogene Ancell and Kathryn Sachs bring this lawsuit against Vericrest Financial, CitiMortgage, VOLT Asset Holdings NPL3, and U.S. Bank Trust. The dispute arises out of the foreclosure of Plaintiffs' home by U.S. Bank as trustee for VOLT. Plaintiffs allege wrongful foreclosure, common law fraud, breach of contract, negligence, negligent misrepresentation, violations of the Missouri Merchandising Practices Act, § 407.010 RSMo. (MPA), and respondeat superior. Before the Court are Defendants' Motions to Dismiss Plaintiffs' Second Amended Complaint, [Docs. 42, 44]. For the reasons set forth below, the Motions to Dismiss are GRANTED.

## I.    Background

The following facts from Plaintiffs' Second Amended Complaint, [Doc. 41], are taken as true for the purpose of determining whether Plaintiffs' Second Amended Complaint should be dismissed for failure to state a claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiffs' home was subject to a mortgage originally owned by Ameriquest. [Doc. 41, ¶ 111]. CitiMortgage acted as the original servicer of the mortgage. *Id.* CitiMortgage was charged with collecting payments, calculating interest, and providing customer support. On May 8, 2009, CitiMortgage placed hazard insurance on the property and began using Plaintiffs' mortgage payments to pay for the hazard insurance. *Id.* at ¶ 5. At the time CitiMortgage placed insurance on the home, Plaintiffs' home was already insured. *Id.* at ¶ 6. Despite having regularly made their monthly mortgage payments, Plaintiffs were informed they were delinquent on their loan because a portion of their mortgage payment was being used to pay the hazard insurance premiums and not the monthly amount due on the mortgage. *Id.* at ¶¶ 7-8. In May 2011, CitiMortgage began threatening foreclosure.

On May 4, 2011, CitiMortgage informed Plaintiffs that Defendant Vericrest would begin servicing the loan, effective April 20, 2011. *Id.* at ¶ 9. CitiMortgage told Plaintiffs it would automatically forward payments made to CitiMortgage to Vericrest. *Id.* at ¶ 132. Plaintiffs made their June 1 payment to CitiMortgage. *Id.* at ¶ 11. CitiMortgage did not forward the payment to Vericrest, and Vericrest informed Plaintiffs their loan was delinquent after missing the June 1 payment. *Id.* at ¶¶ 14-15.

In the summer of 2011, Vericrest sent Plaintiffs multiple letters indicating that Plaintiffs were in default. Because of these statements, Plaintiffs sought a loan modification from Vericrest. Plaintiffs submitted a loan modification application to Vericrest in October 2011. In November 2011, Vericrest confirmed receipt of the application and indicated they would process the application, investigate further if

needed, and follow up with a decision within the next thirty days. *Id.* at ¶ 21. No decision was provided to Plaintiffs within the thirty day time period, and no additional information was requested by Vericrest. *Id.* at ¶ 22.

On December 5, 2011, Vericrest informed Plaintiffs that VOLT purchased their mortgage, effective November 17, 2011. *Id.* at ¶ 23. On December 28, Vericrest informed Plaintiffs that they were approved for a forbearance plan. *Id.* at ¶ 24. Under the terms of the forbearance plan, Plaintiffs were to send increased payments, and in exchange, Vericrest promised no foreclosure activity for the period of February 1, 2012 through January 1, 2013. *Id.* at ¶¶ 24, 56, 59. Plaintiffs made the required payments and Vericrest accepted the payments. *Id.* at ¶¶ 25-26.

On July 20 and 23, 2012, Plaintiffs sent in another loan modification application requesting mortgage assistance. In October 2012, Vericrest confirmed receipt of the application and indicated Plaintiffs would receive a decision within thirty days of the letter. *Id.* at ¶ 30. A decision was not provided within thirty days of the letter, and no additional information was sought from Plaintiffs. *Id.* at ¶ 31.

On December 13, 2012, Plaintiffs received notice from a law firm stating it would pursue foreclosure proceedings if past due amounts were not paid. *Id.* at ¶ 33. On May 16, 2013, U.S. Bank, as trustee for VOLT, foreclosed on Plaintiffs' home. *Id.* at ¶ 38.

The Second Amended Complaint contains ten counts. Plaintiffs allege Vericrest is liable for wrongful foreclosure, common law fraud, breach of contract, negligence and negligent misrepresentation (Counts I-V) arising out of the forbearance plan, Vericrest's failure to follow through with Plaintiffs' loan modification applications, and Vericrest's

failure to audit Plaintiffs' loan to ensure any amount owed was not a miscalculation.

Plaintiffs allege CitiMortgage is liable for breach of contract, violation of the MPA,

negligence, and negligent misrepresentation (Counts VI-IX) arising out of CitiMortgage's

placement of hazard insurance on the property, its failure to honor the forbearance plan

and other loan modification terms, its determination that Plaintiffs' loan was delinquent,

and its failure to forward Plaintiffs' June 1 payment to Vericrest. Plaintiffs allege VOLT

and U.S. Bank are liable for Vericrest's and CitiMortgage's actions under the theory of

respondeat superior (Count X).

## II. Discussion

### A. Claims Against Vericrest

#### 1. Count I: Wrongful Foreclosure

Count I alleges Vericrest is liable for wrongful foreclosure, because Plaintiffs

made their required monthly payments to Vericrest and were not in default at the time

Vericrest initiated foreclosure or when the foreclosure occurred. [Doc. 41, at ¶¶ 49-50].

Under Missouri law, "when a foreclosure is wrongful because no default giving

rise to a right to sell exists, the mortgagor has two remedies: it can let the sale stand and

sue at law for damages or it can bring an equitable action to have it set aside." *Dobson v.

Mortg. Elec. Registration Sys., Inc./GMAC Mortg. Corp.*, 259 S.W.3d 19, 22 (Mo. Ct.

App. 2008). Plaintiffs seek equitable relief. [Doc. 41, at ¶ 53].

However, Count I fails to state a claim upon which relief may be granted.

Plaintiffs failed to plead factual information to support their allegation that Vericrest is

the party that initiated foreclosure proceedings or foreclosed on Plaintiffs' home.

Plaintiffs pleaded in Count I that "Vericrest foreclosed on Plaintiffs' home wrongfully," [Doc. 41, at ¶ 51], but this statement is both a legal conclusion and inconsistent with Plaintiffs' statement of the facts. Plaintiffs allege their "home was foreclosed by Defendant U.S. Bank as trustee for VOLT Asset Holdings NPL3," and that the mortgage was owned by VOLT. *Id.* at ¶¶ 23, 32, 38. Plaintiffs ask the Court to set aside the sale of their home, but Vericrest is not the party who owned the mortgage or sold the home.

Plaintiffs argue their wrongful foreclosure claim should not be dismissed because the fact that the sale occurred at all when Plaintiffs were not in default makes the sale wrongful. However, Plaintiffs fail to address why Vericrest, as the loan servicer, is the party liable for wrongful foreclosure when VOLT, the mortgagee, and U.S. Bank, the trustee, were the parties who foreclosed the property. Accordingly, Plaintiffs' wrongful foreclosure claim against Vericrest is dismissed for failure to state a claim.

### 2. Count II: Common Law Fraud

Count II alleges Vericrest approved Plaintiffs for a forbearance plan that suspended foreclosure activity through January 1, 2013, but that the plan was fraudulent because Plaintiffs received a letter from a law firm in December 2012, prior to the end of the forbearance period, threatening foreclosure. To survive a motion to dismiss on a fraud claim, a plaintiff must plead sufficient facts to establish: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely

thereon; and (9) the hearer's consequent and proximately caused injury." *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 131-32 (Mo. 2010). "The circumstances constituting fraud must be pled with particularity . . . ." *Dorsch v. Family Med., Inc.*, 159 S.W.3d 424, 430 (Mo. Ct. App. 2005). Vericrest argues Count II should be dismissed because Plaintiffs failed to allege facts establishing a representation, falsity, materiality, how Plaintiffs relied on the purported representation, Plaintiffs' right to rely on the representations, or proximate cause. [Doc. 43, at p. 5].

Assuming Plaintiffs alleged sufficient facts to establish Vericrest made a representation by stating it would suspend "foreclosure activity" until January 1, 2013, Plaintiffs have failed to sufficiently plead the falsity of that representation. "The truth or falsity of the representation is determined as of the time it was made and as of the time it was intended to be relied and acted upon." *Velder v. Cornerstone Nat. Ins. Co.*, 243 S.W.3d 512, 517 (Mo. Ct. App. 2008); *Dorsch*, 159 S.W.3d at 433. Plaintiffs pleaded that a forbearance plan was in place from February 2012 to January 2013 and that the plan was "cancelled" in December 2012 when Plaintiffs received a letter from a law firm threatening foreclosure. While foreclosure did not occur until May 2013 – after the end of the forbearance period – Plaintiffs allege the plan was fraudulent because the December 2012 letter was "foreclosure activity." However, Plaintiffs have not pleaded that Vericrest's representation was false at the time it was made or at the time it was intended to be relied upon. *See Renaissance Leasing*, 322 S.W.3d at 133 ("When a fraud claim is based on a statement of intent, the plaintiff establishes falsity by showing that when the statement was made, the speaker did not intend to perform consistently with the

statement.); *CADCO, Inc. v. Fleetwood Enterprises, Inc.*, 220 S.W.3d 426, 436 (Mo. Ct. App. 2007) ("It is well-settled that an unkept promise does not constitute actionable fraud unless the promise is accompanied by the defendant' present intent not to perform, which constitutes a misrepresentation of a present state of mind, itself an existent fact."). Plaintiffs do not plead that the terms of the forbearance plan were false at the time the forbearance plan began or that Vericrest knew the representations were false when it made them. The fact that Vericrest did not perform as promised is not enough. *See Joel Bianco Kawasaki Plus v. Meramec Valley Bank*, 81 S.W.3d 528, 538 (Mo. 2002) (holding that a bank's agreement to stay replevin proceedings in return for additional collateral was false at the time the agreement was entered into; agreement was made only for the purpose of demanding more money from the debtor as evidenced by the fact that the bank had trucks waiting outside during the meeting in order to continue with the replevin and the replevin continued while the debtor was negotiating a sale of his property with potential buyers in order to pay off debts); *Clearly Canadian Beverage Corp. v. Am. Winery, Inc.*, 257 F.3d 880, 891 (8th Cir. 2001) ("Nonperformance, without more, does not make out a submissible case of fraudulent misrepresentation.") (applying Missouri law).

Plaintiffs have failed to plead that the terms of the forbearance plan were false at the time the plan was executed. A plaintiff's failure to establish any one of the elements of fraud is fatal to recovery, so the Court will not address Vericrest's other arguments. *Renaissance Leasing, LLC*, 322 S.W.3d at 132. Count II is dismissed.

### 3. Count III: Breach of Contract

Plaintiffs allege "Vericrest breached both its obligation not to foreclose when the plaintiffs were current and its subsequent promise to forbear." [Doc. 41, at p. 11, ¶ 67]. Plaintiffs also claim that Vericrest "unilaterally cancelled the forbearance agreement" and "sold Plaintiffs' property despite their performance and reliance that Vericrest would not." *Id.* at ¶¶ 73-74. Vericrest argues Count III should be dismissed because Plaintiffs failed to plead a valid contract existed or a breach occurred.

Merely pleading that Vericrest breached an agreement not to foreclose on Plaintiffs' property is insufficient to state a plausible claim. Even if receiving notice from a law firm threatening foreclosure was "foreclosure activity" – something that cannot be determined from the Plaintiffs' skeletal Complaint – Plaintiffs have not alleged that Vericrest caused that letter to be sent or even identified any relationship between Vericrest and the law firm that sent the letter. This is particularly relevant since Plaintiffs' own pleading indicates VOLT and U.S. Bank are the parties who foreclosed the property and filed a petition for unlawful detainer, not Vericrest, making it more likely than not that U.S. Bank or VOLT were responsible for any "foreclosure activity."

Furthermore, under Missouri law, an agent for a disclosed principal is not a party to a contract and is not liable for its nonperformance. *Hardcore Concrete, LLC v. Fortner Ins. Servs., Inc.*, 220 S.W.3d 350, 355 (Mo. Ct. App. 2007); *K & G Farms v. Monroe Cnty. Serv. Co.*, 134 S.W.3d 40, 43 (Mo. Ct. App. 2003).

> The liability, if any, is that of the principal. If a contract is made with a
> known agent acting within the scope of his authority for a disclosed
> principal, the contract is that of the principal alone and the agent cannot be

held liable thereon, unless credit has been given expressly and exclusively to the agent and it appears that it was clearly his intention to assume the obligation as a personal liability and that he has been informed that credit has been extended to him alone."

*Austin v. Trotter's Corp.*, 815 S.W.2d 951, 958 (Mo. Ct. App. 1991). As a matter of law, Vericrest cannot be liable for any nonperformance because even Plaintiffs acknowledge that Vericrest was acting as an agent for VOLT and U.S. Bank. [Doc. 41, at p. 20, ¶ 146].

Plaintiffs may also be arguing that they are entitled to promissory estoppel because Vericrest made statements lulling Plaintiffs into believing their house would not be foreclosed. In *Edwards v. Smith*, 322 S.W.2d 770 (Mo. 1959), the Supreme Court of Missouri held that a mortgagor who told the mortgagees they could make infrequent multiple payments and that their mortgage would not be foreclosed if that manner of payment was followed was precluded under the theory of promissory estoppel from accelerating the loan when a monthly payment was not timely made. *Id.* at 775. The court agreed with the mortgagors that the mortgagees engaged in a course of conduct which lulled them into a false sense of security that their mortgage would not be foreclosed if they defaulted on payments. However, as discussed above, Plaintiffs have not plausibly alleged that Vericrest was responsible for any "foreclosure activity" and therefore, have not stated how Vericrest breached any promise it allegedly made. Count III is dismissed.

### 4. Count IV: Negligence

Count IV alleges Vericrest breached several duties it owed to Plaintiffs. "In an action for negligence, plaintiff must establish that defendant had a duty to plaintiff, that defendant failed to perform that duty, and that defendant's breach was the proximate cause of plaintiff's injury." *Hardcore Concrete, LLC v. Fortner Ins. Servs., Inc.*, 220 S.W.3d 350, 355 (Mo. Ct. App. 2007). Vericrest argues Count IV should be dismissed because, as the servicer of their loan, Vericrest owes no legal duty to Plaintiffs.

Vericrest first argues that the relationship between it and Plaintiffs is similar to that of a lender/borrower. While it is true that under Missouri law a lender does not ordinarily owe a duty to a borrower, *Wood & Huston Bank v. Malan*, 815 S.W.2d 454, 458 (Mo. Ct. App. 1991), there may be some circumstances where a loan servicer does owe a duty to a borrower. *See Lonergan v. Bank of Am., N.A.*, 2013 WL 176024 (W.D. Mo. 2013) (holding that a bank, in its capacity as a loan servicer, owed a duty to exercise reasonable care in providing the borrowers with accurate information). However, Plaintiffs' Second Amended Complaint pleads a much broader duty than found in *Lonergan*. Plaintiffs allege Vericrest had a duty to: honor the deed of trust and not foreclose unless there was a default, regularly audit loans to verify the accuracy of the amount owed by customers, actively communicate with its own departments to prevent contradictory information being sent to customers, verify whether the placement of insurance on a loan by a previous loan servicer is necessary, honor promises made to customers, and act prudently in initiating foreclosure proceedings. [Doc. 41, at p. 13-14]. Plaintiffs do not allege Vericrest had superior knowledge and provided them with inaccurate information, and they do not cite to any contract Plaintiffs made with Vericrest

other than the forbearance plan which has already been discussed. Though detailed factual allegations are not required to survive a motion to dismiss, a complaint must have more than naked assertions devoid of meaningful development that would permit the Court to evaluate the viability of the claims.  *See Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) ("A district court, therefore, is not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint.") (internal citations and quotations omitted).

Further, the Supreme Court of Missouri has held that a trustee in a foreclosure proceeding, who has a duty to act with fairness toward both a debtor and creditor, is not liable for failing to investigate a default before foreclosure.  *Spires v. Edgar*, 513 S.W.2d 372, 378 (Mo. 1974).   In *Spires*, the Supreme Court of Missouri held that the plaintiffs, who claimed wrongful foreclosure, failed to state a claim against the trustee when they alleged that "the trustee owed plaintiffs a duty, when directed to foreclose, to make an affirmative investigation, presumably by inquiry from plaintiffs, and thus to find out whether plaintiffs claimed that they were not delinquent and the factual reasons for their claim."  *Id.  Spires* suggests that Missouri courts would find no duty owed by Vericrest, as a loan servicer, to investigate the accuracy of the amount owed on the loan and verify whether hazard insurance was appropriately placed on the property absent further allegations by the Plaintiffs that Vericrest knew the amount owed was inaccurate or hazard insurance should not have been placed on the home.  *See also Sparks v. PNC Bank*, 400 S.W.3d 454, 458 (Mo. Ct. App. 2013) ("When requested by the creditor to foreclose, the trustee may proceed without making any affirmative investigation unless

the trustee has actual knowledge "of anything which should *legally* prevent the foreclosure.") (emphasis in original).  Count IV is dismissed.

### 5.  Count V: Negligent Misrepresentation

Count V alleges Vericrest is liable for negligent misrepresentation for telling Plaintiffs it was actively processing their loan modification application but never responding to the application and for telling Plaintiffs they were in a forbearance plan but then terminating the plan and beginning foreclosure proceedings.  The elements of a negligent misrepresentation claim are: (1) the speaker supplied information in the course of his business or because of some other pecuniary interest; (2) due to the speaker's failure to exercise reasonable care or competence in obtaining or communicating this information, the information was false; (3) the speaker intentionally provided the information for the guidance of a limited group of persons in a particular business transaction; (4) the listener justifiably relied on the information; and (5) as a result of the listener's reliance on the statement, the listener suffered a pecuniary loss.  *Harris v. Smith,* 250 S.W.3d 804, 808 (Mo. Ct. App. 2008).

As discussed above, Plaintiffs have failed to allege that Vericrest was responsible for any "foreclosure activity" that occurred.  There is no plausible allegation that any information communicated by Vericrest was false at the time made, or that as a result of any information communicated by Vericrest, Plaintiffs were injured.

Count V also alleges Vericrest stated it would process and decide Plaintiffs' loan modification application but failed to do so.  In their Second Amended Complaint, Plaintiffs allege that on two separate occasions, they submitted loan modification

applications and received letters from Vericrest confirming receipt of the application. The letters stated "we expect to provide you with a decision regarding your eligibility within 30 days," "in the next 30 days you can expect that we will complete a review of the documents you provide and, if necessary, we will request additional information," "we will contact if you do not qualify for this program," and "we will also contact you if you do not qualify for this program." [Doc. 41, at p. 4-6, ¶¶ 21, 30]. Plaintiffs relied on Vericrest's representation that their modification application was actively being reviewed and processed by taking no further action. *Id.* at p. 14, ¶ 92.

Vericrest argues that Plaintiffs have failed to state a claim for negligent misrepresentation because Plaintiffs have not alleged how they relied on Vericrest's statements. The Court agrees. Plaintiffs have merely made a conclusory allegation that they took no action but have not said what action they could have taken to prevent the harm they allege – the foreclosure of their home. Similarly, they have failed to allege what pecuniary harm they incurred as a result of Vericrest telling them that a decision would be made within thirty days or that they would be notified if Plaintiffs did not qualify for the modification program. Plaintiffs have not alleged what they would have done had they known no decision would be made in the time projected by Vericrest or what the outcome of their actions would or even could have been, if Vericrest had responded in a timely fashion.

Vericrest's motion to dismiss Count V is granted.

**B. Claims against CitiMortgage**

**1. Count VI: Breach of Contract**

Count VI alleges CitiMortgage is liable for breach of contract after it "unilaterally invoked the forced place insurance provision of the note signed by Plaintiffs" despite Plaintiffs' performance of all duties owed under the promissory note, "including carrying insurance on the property at all times with Allstate." [Doc. 41, at p. 15, ¶¶ 105-106]. The elements of a breach of contract claim are: (1) the existence of an enforceable contract between the parties; (2) mutual obligations arising under the terms of the contract; (3) one party's failure to perform the obligations imposed by the contract; and (4) the resulting damage to the other party. *Midwest Bankcentre v. Old Republic Title Co. of St. Louis*, 247 S.W.3d 116, 128 (Mo. Ct. App. 2008). CitiMortgage argues Count VI should be dismissed because Plaintiffs have failed to identify the rights and obligations of the parties under any contract.

A complaint alleging breach of contract cannot survive a motion to dismiss if it fails to set out the rights and obligations of the parties under the contract alleged to have been breached. *Trotter's Corp. v. Ringleader Restaurants, Inc.*, 929 S.W.2d 935, 941 (Mo. Ct. App. 1996). Plaintiffs allege CitiMortgage breached the terms of the note when it placed hazard insurance on Plaintiffs' home despite coverage of the home by Plaintiffs' insurer. However, Plaintiffs failed to attach the note or identify any specific agreement or provision within the note that dictated when and under what circumstances CitiMortgage could or could not place insurance on Plaintiffs' home and how coverage of the home by Plaintiffs' insurer affected those circumstances. *See In re Shelton*, 481 B.R. 22, 27-28 (W.D. Mo. 2012) (borrower stated a claim for breach of contract by alleging she and the bank had an enforceable contract, that bank had specific statutory obligations, that the

deed of trust incorporated those obligations, and that the bank breached the terms of the deed by foreclosing without complying with those statutory obligations).

Plaintiffs argue Count VI should not be dismissed because the Second Amended Complaint states that Plaintiffs performed all duties they owed, including carrying insurance on the property. However, Plaintiffs' reference in their Second Amended Complaint to the "forced place insurance provision of the note" and their allegation that "Citi breached its obligations" do not identify what the rights and obligations of CitiMortgage and Plaintiffs were or why CitiMortgage's placement of insurance on the home is a breach of its obligations. "Vague references to unspecified agreements are insufficient to state a claim for breach of contract." *Reitz v. Nationstar Mortg., LLC*, 954 F.Supp.2d 870, 884 (E.D. Mo. 2013). Alleging CitiMortgage breached an unspecified obligation without identifying the obligation is a "naked assertion . . . devoid of further factual enhancement" and cannot survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court has insufficient information to determine whether the terms of the note have been breached without knowing what the note allegedly says. Accordingly, Count VI is dismissed.

### 2. Count VII: Violation of Missouri Merchandising Practices Act, § 407.010 RSMo

Count VII alleges CitiMortgage violated the MPA, when it: (1) placed Plaintiffs in a permanent loan modification program, refused to honor the modification, and accelerated Plaintiffs' loan, (2) failed to honor the forbearance plan between Plaintiffs and Vericrest, (3) unilaterally decided Plaintiffs owed for hazard insurance on the home,

and (4) wrongfully foreclosed Plaintiffs' home. [Doc. 41, at p. 16-17]. CitiMortgage argues Count VII should be dismissed because none of the violations are connected with the initial sale or financing of Plaintiffs' home. [Doc. 45, at p. 7].

The MPA makes it unlawful to use fraud, false pretenses, false promises, misrepresentations, or unfair practices in connection with the sale or advertisement of any merchandise in trade or commerce. Mo. Rev. Stat. § 407.020.1. Merchandise includes real estate. *Id.* at § 407.010(4). Any act described above violates the MPA "whether committed before, during or after the sale, advertisement or solicitation." *Id.* at § 407.020.1. Section 407.025 provides a civil remedy.

The Missouri Court of Appeals has interpreted the phrase "in connection with the sale or advertisement of" to mean that there must be a "'relationship in fact' between the advertising and sale of the merchandise at issue . . . and the unfair practices alleged against" the defendant. *State ex rel. Koster v. Prof'l Debt Mgmt., LLC*, 351 S.W.3d 668, 672 (Mo. Ct. App. 2011). A plaintiff fails to state a claim under the MPA when the plaintiff has not alleged that the acts were "made before or at the time of the advertising or purchase of the merchandise" or where the defendant "is not alleged to have been a party to or have had any involvement with the initial sales transaction between the buyer and seller." *Id.*; *see also Conway v. CitiMortgage, Inc.*, 2013 WL 6235864 (Mo. Ct. App. 2013).

First, Plaintiffs claim that CitiMortgage violated the MPA when it placed Plaintiffs in a loan modification program, but then refused to honor the modification and accelerated Plaintiffs' loan. [Doc. 41, at p. 16-17, ¶ 115(a)]. However, Plaintiffs do not

plead what they purchased and what CitiMortgage did in connection with any purchase that violates the MPA. Assuming Plaintiffs are referring to their "purchase" of a loan, they have not pleaded any representations made by the lender or CitiMortgage in connection with the purchase of the loan that relates to Plaintiffs being placed in a loan modification program or later problems with honoring the loan modification program.

Plaintiffs also allege CitiMortgage violated the MPA when it failed to honor a valid forbearance plan. [Doc. 41, at p. 16-17, ¶ 115(b)]. However, Plaintiffs' Second Amended Complaint alleges the forbearance plan was executed between Vericrest and Plaintiffs around December 2011, nearly eight months after CitiMortgage ceased servicing the loan. Further, Plaintiffs have alleged no facts to support a reasonable inference that any forbearance plan was connected to the original loan transaction.

Plaintiffs also allege that beginning in May 2009, CitiMortgage unilaterally decided Plaintiffs owed for hazard insurance on the home when Plaintiffs already had insurance on the home. Plaintiffs do not plead facts establishing how placement of the insurance relates to the original loan transaction. Plaintiffs do not plead what the terms of the loan agreement were as they relate to homeowners' insurance or how placement of the insurance on the home was fraudulent or an "unfair practice."

Finally, Plaintiffs allege CitiMortgage violated the MPA when it wrongfully foreclosed on Plaintiffs' home. Assuming that the foreclosure sale is a separate sales transaction under the MPA, Plaintiffs have failed to sufficiently allege a MPA claim in connection with the foreclosure. *See Wivell v. Wells Fargo Bank, N.A.*, 2013 WL 2089222 at *4 (W.D. Mo. 2013). To establish a MPA claim, a plaintiff must allege that

she purchased merchandise and suffered loss from fraudulent or unfair practices. Plaintiffs did not purchase anything in connection with the foreclosure sale. "Being foreclosed upon is not purchasing or leasing merchandise; it is not even analogous to purchasing or leasing merchandise." *Id.*

Plaintiffs cite to *Ports Petroleum Co., Inc. of Ohio v. Nixon*, 37 S.W.3d 237, 240 (Mo. 2007), for the proposition that "unfair practice" covers "every practice imaginable and every unfairness to whatever degree." Plaintiffs argue "unfair practices" includes collection on the loan and inducement of default and foreclosure. [Doc. 47, at p. 12]. However, the plaintiff in *Ports Petroleum* alleged a violation of the MPA based on the *sale* of motor fuel below cost with the intent to injure competition. The court's interpretation of "unfair practice" was a broad one but still related to the sale of merchandise. *See also Williams v. Regency Fin. Corp.*, 309 F.3d 1045, 1050 (8th Cir. 2002) ("Despite the broad construction given the phrase 'unfair practice,' the MPA provides a remedy only for 'unfair practices' that are connected "'with the sale or advertisement of any merchandise.'").

Plaintiffs cite to *Schuchmann v. Air Servs. Heating & Air Conditioning, Inc.*, 199 S.W.3d 228 (Mo. Ct. App. 2006), in support of the MPA foreclosure claim. In *Schuchmann*, the seller sold the buyer a heating and air conditioning unit and promised the buyer a "lifetime warranty" when he purchased the unit. *Id.* at 230-31. The seller eventually refused to honor the warranty, and the buyer alleged an "unfair practice" in violation of the MPA. The seller argued the buyer had not established an MPA violation because there was no evidence of fraud or unfair practices at the time of the sale. *Id.* at

232.  The Missouri Court of Appeals disagreed and held that the failure to honor the lifetime warranty was actionable under the MPA.  *Id.* at 233.  The court remarked that there was evidence to support a finding that the seller "preyed on unsophisticated consumers, inducing them to buy its product on the promise that the units would work for a 'lifetime' or the problem would be fixed."  *Id.*

This case is distinguishable from *Schuchmann*.  The representation that the warranty in *Schuchmann* would be a lifetime one was made in connection with the sale of the unit and induced the sale of the unit.  Refusal to honor the warranty was post-sale conduct, but it was in connection with the sale of the unit.  The Missouri Court of Appeals, in a later discussion of *Schuchmann*, remarked that

> the MPA applies to deceptive or unfair post-sale conduct, but only when such conduct directly relates to the sale or advertisement of merchandise. The "before, during or after the sale" language of the MPA does not eliminate, but merely modifies the requirement that the unfair trade practices be made "in connection with" the sale.

*State ex rel. Koster v. Portfolio Recovery Assocs.*, 351 S.W.3d 661, 667 (Mo. Ct. App. 2011) (holding that a third-party debt collector did not violate the MPA for collecting debts that were not owed and engaging in unethical collection practices because plaintiffs did not allege the company was a party to the original sales transaction or that any deceptive or unfair practice occurred either before or at the time the initial sales transaction was concluded).  Plaintiffs have not alleged CitiMortgage's post-sale conduct directly relates to the initial financing transaction or the sale of the home or that the

conduct violates a promise or representation made to Plaintiffs when the loan documents were executed. Thus, Plaintiffs have failed to state a claim under the MPA, and Count VII is dismissed.

### 3. Count VIII: Negligence

Count VIII alleges CitiMortgage breached its duty to investigate whether a customer has insurance on a property, its duty to effectively communicate with customers about whether a property is insured, its duty to act prudently in classifying a customer as "in default," its duty to honor the deed of trust and not foreclose unless there was a default, and its duty not to place unnecessary insurance or other services on a home. [Doc. 41, at ¶¶ 122-26].

CitiMortgage argues Count VIII should be dismissed because Plaintiffs' negligence claim is based on breach of the force placed insurance provision of the note, and a breach of contract, without more, cannot serve as the basis for a negligence claim. Plaintiffs argue their negligence claim is an alternative pleading to their breach of contract claim. However, even assuming Plaintiffs' negligence claim is independent from Plaintiffs' breach of contract claim and does not rely on a breach of the force placed insurance provision of the note, Plaintiffs have failed to plead any legal duty owed by CitiMortgage to Plaintiffs. If CitiMortgage's duties do not stem from a contract, then Plaintiffs must identify the legal source of the duty owed. Plaintiffs argue in their response that a duty may be imposed on a party by common law under the circumstances of a given case and reiterate the alleged duties CitiMortgage owed to Plaintiffs, but cite to no case law establishing a common law duty to perform any of the duties Plaintiffs plead.

As discussed above in Section II.A.4, Plaintiffs have cited no Missouri law establishing a general duty owed by a loan servicer to a borrower. Missouri law suggests that where the loan servicer possesses superior knowledge or information, the loan servicer must provide a borrower with accurate information, but Plaintiffs do not allege CitiMortgage provided them with inaccurate information. *Compare Lonergan v. Bank of Am., N.A.*, 2013 WL 176024 (W.D. Mo. 2013).

Plaintiffs cite to *Hoover's Dairy, Inc. v. Mid-Am. Dairymen, Inc./Special Products, Inc.*, 700 S.W.2d 426 (Mo. 1985), in support of their proposition that a common law duty can be imposed on CitiMortgage. In *Hoover's Dairy*, a company undertook the installation of a milking system it sold to the plaintiff and failed to conduct a systems analysis after installation which led to infection in many of plaintiff's cows. The Supreme Court of Missouri held that the company owed a duty of reasonable care to the plaintiff when installing the equipment and remarked that "the law imposes an obligation upon everyone who attempts to do anything, even gratuitously, for another, to exercise some degree of care and skill in the performance of what he has undertaken." *Id.* at 432-33. *Hoover's Dairy* is distinguishable from this case. Plaintiffs have not alleged CitiMortgage undertook to perform a service for the Plaintiffs' benefit. Rather, CitiMortgage was a loan servicer providing a service to the owner of the loan by attempting to collect payments from the borrower. Count VIII is dismissed.

### 4. Count IX: Negligent Misrepresentation

Count IX alleges CitiMortgage told Plaintiffs it would automatically forward payments made to it in May 2011 to Vericrest but failed to do so, thereby leading

Vericrest to believe Plaintiffs were delinquent on their loan. [Doc. 41, at ¶¶ 132-34]. To establish a negligent misrepresentation claim, a plaintiff must plead that due to a speaker's failure to exercise reasonable care or competence in obtaining or communicating information, the information the speaker communicated was false. *Harris v. Smith,* 250 S.W.3d 804, 808 (Mo. Ct. App. 2008). Under Missouri law, "a negligent misrepresentation claim cannot arise from a statement regarding the speaker's future intent." *Clearly Canadian Beverage Corp. v. Am. Winery, Inc.*, 257 F.3d 880, 893 (8th Cir. 2001) (citing *Hoag v. McBride & Son Inv. Co.*, 967 S.W.2d 157, 174 (Mo. Ct. App. 1998)). "A claim does not lie for negligent misrepresentation of a speaker's future intent because it is impossible to be negligent in failing to ascertain the truth or falsity of one's own future intentions." *Id.* (internal quotations omitted). CitiMortgage told Plaintiffs it would automatically forward payments made to in May 2011 to Vericrest. Plaintiffs relied on these statements and made their June payments to CitiMortgage, but CitiMortgage never forwarded the money to Vericrest. CitiMortgage's statement that it would forward any payments it received to Vericrest is a statement of future intent and cannot be the basis of Plaintiffs' negligent misrepresentation claim.

Plaintiffs cite *Frame v. Boatmen's Bank of Concord Village*, 824 S.W.2d 491, 494 (Mo. Ct. App. 1992), as a "binding appellate case arising under Missouri law" that "arose in the very context of a lender giving false information about future performance to a borrower." [Doc. 47, at p. 14]. Plaintiffs argue that in *Boatmen's*, the Missouri Court of Appeals found that a bank could be liable for negligent misrepresentation by promising to loan a borrower money and ultimately refusing to make the loan. However, while the

Missouri Court of Appeals found that the plaintiff stated a claim for negligent misrepresentation, it was not based on the bank's promise to loan money in the future. The bank in *Boatmen's* argued that the plaintiff failed to make a submissible claim for negligent misrepresentation since the misstatement that the bank would lend the plaintiff money was an intention of future performance. *Id.* at 492. The Missouri Court of Appeals disagreed because the borrower's "claim was not based merely upon the bank's promise to lend him money in the future, but that the bank, through its loan officer . . . , failed to exercise reasonable care in informing [the borrower] of all the existing contingencies which were to be met before the loan could be made." *Id.* at 492-93. The borrower's negligence misrepresentation claim "was not based merely on the bank's promise to lend him money in the future." *Id.* at 492.

Plaintiffs' negligent misrepresentation claim is based on a statement of future intent and must be dismissed. Further, Plaintiffs have not stated any other legal theory to support its claim against CitiMortgage for not forwarding a payment to Vericrest. Therefore, the Court must dismiss this claim as well.

### C. Claim against VOLT Asset Holdings and U.S. Bank Trust – Count X: Respondeat Superior

Count X alleges that Vericrest and CitiMortgage were the agents of VOLT and U.S. Bank, and therefore, VOLT and U.S. Bank are responsible for Vericrest's and CitiMortgage's actions, described in Counts I-IX. [Doc. 41, at ¶¶ 146-47]. Under Missouri law, "an employer is liable under the theory of respondeat superior for damages attributable to the misconduct of an employee or agent acting within the source and scope

of the employment or agency." *McHaffie By & Through McHaffie v. Bunch*, 891 S.W.2d 822, 825 (Mo. 1995). However, "an employer will not be held liable under the doctrine of respondeat superior when its employee is held not liable to the plaintiff." *Thornburg v. Fed. Express Corp.*, 62 S.W.3d 421, 429 (Mo. Ct. App. 2001). The Court has dismissed all claims against Vericrest and CitiMortgage. Therefore, Plaintiffs' respondeat superior claim must be dismissed as well.

## III. Conclusion

For the reasons set forth above, Defendants' Motions to Dismiss is GRANTED. Counts I-X are dismissed as to all Defendants.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: May 19, 2014
Jefferson City, Missouri